IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRENDA T. PETREY, o/b/o
BRIAN A. PETREY, deceased,

                    Plaintiff,

vs.                                          Case No. 13-1472-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits prior to January 1, 2011.  The matter has
been fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On July 13, 2012, administrative law judge (ALJ) Alison K. Brookins issued her decision (R. at 15-26). Plaintiff alleges that he had been disabled since March 11, 2008 (R. at 15). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2013 (R. at

4

18).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since March 11, 2008, the alleged onset date (R. at 18).  At step two, the ALJ found that plaintiff had severe physical impairments of gout and asthma (R. at 18).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19).  After determining plaintiff's RFC prior to January 1, 2011 (R. at 20), the ALJ determined at step four that plaintiff was able to perform past relevant work (R. at 24), and was therefore not disabled prior to January 1, 2011 (R. at 26).

The ALJ also determined plaintiff's RFC as of January 1, 2011 (R. at 23).  As of that date, the ALJ found that plaintiff could not perform past relevant work (R. at 25), and could not perform other jobs that exist in significant numbers in the national economy (R. at 25).  Therefore, the ALJ found that plaintiff was disabled as of January 1, 2011 (R. at 26).

## III.  Are the ALJ's RFC findings supported by substantial evidence?

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a

5

treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2).  When a treating physician opinion is not given

controlling weight, the ALJ must nonetheless specify what lesser

weight he assigned the treating physician opinion.  Robinson v.

Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating

source opinion not entitled to controlling weight is still

entitled to deference and must be weighed using all of the

following factors:

(1) the length of the treatment relationship and the frequency
of examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area
upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

     After considering the above factors, the ALJ must give good

reasons in his/her decision for the weight he/she ultimately

assigns the opinion.  If the ALJ rejects the opinion completely,

he/she must then give specific, legitimate reasons for doing so.

Watkins, 350 F.3d at 1301.

     The court will first review the medical opinion evidence

and the relative weight given to that evidence by the ALJ.

Plaintiff has been treated by Dr. Yang since 2004 (R. at 1548).

On March 28, 2008, Dr. Yang stated that plaintiff was "pretty

debilitated by his gout," and that this "actually precludes him from doing a lot of standing."  In particular, he "cannot stand continuously and will have to set down.  Basically, this limits him to either desk work or work which does not require a lot of standing" (R. at 1387).  Dr. Yang opined that plaintiff cannot work continuously for 2 hours on his feet, or walk consistently for 2 hours.  He recommended that the best job for him would be a sit-down job (R. at 1387).

On February 23, 2010, Dr. Yang stated that plaintiff suffers from gout and asthma, he has severe pain that prevents him from walking, and that both conditions result in significant ambulatory difficulties (R. at 1477).  Dr. Yang's notes from February 12, 2010 state that plaintiff has debilitating gout, and is not able to stand for a great deal of time without getting significant discomfort and pain (R. at 1476).

On April 23, 2011, Dr. Yang noted that he had treated plaintiff since 2004.  He indicated that plaintiff obtained employment after his discharge from the Air Force in 2008, but plaintiff could not stand for extended periods of time, and at some point, had to use crutches just to work because of severe pain in his feet.  Dr. Yang stated that since that time, plaintiff has not been able to hold down steady employment due to excruciating pain in his feet, and cannot obtain employment

due to the fact that he is not able to walk because of severe pain in his feet from gouty arthritis (R. at 1676).

In a letter dated May 16, 2011, Dr. Yang noted that plaintiff tried to work in February-March 2009, but it only lasted two weeks.  Despite trying to stay off his feet by sitting as much as possible, plaintiff was unable to carry out his duties, and had to use a chair to roll between work stations.  Others had to do any lifting and carrying.  Plaintiff was on crutches by the end of the first week of work (R. at 1548).  Dr. Yang opined that plaintiff met a listed impairment as of March 2008 (R. at 1549).  Dr. Yang indicated that plaintiff needed to elevate his feet to reduce pain and swelling, and needed full-foot orthotics as well as crutches to reduce weight on his feet.  Plaintiff also needs to alternate sitting, standing and walking to reduce pain, and can only carry 10 pounds or less (R. at 1549).  He further opined that plaintiff needs the use of a wheelchair to avoid walking or standing when his use of crutches is precluded because of shoulder, upper back, and chest pain, and when plaintiff gets short of breath (R. at 1550).

Dr. Winkler, a non-examining physician, provided an opinion regarding plaintiff's limitations on May 29, 2011.  Dr. Winkler opined that plaintiff could frequently lift and carry up to 20 pounds, and occasionally lift and carry up to 50 pounds.  Dr.

Winkler indicated that plaintiff could sit for 4 hours at one
time, and 8 hours in a workday.  Plaintiff could stand and walk
for 3 hours at a time, and for 6 hours in a workday (R. at 1563-
1572).  Dr. Winkler's report is a check-the-box report without
any narrative explanation or discussion of the basis of her
findings.

    Dr. Yang responded to this opinion by Dr. Winkler, stating
that plaintiff is unable to lift or carry frequently 20 pounds,
and further stated that plaintiff is not able to walk at any
time without interruption for 3 hours or for 6 hours in a
workday.  Dr. Yang indicated that plaintiff uses a cane and can
only ambulate about 5 feet without the use of a cane.  Dr. Yang
reiterated that plaintiff meets a listed impairment and needs to
elevate his feet, use full-foot orthotics, and crutches or cane
for ambulation (R. at 1575).

    The ALJ gave "significant" weight to the opinions of Dr.
Winkler, stating that her opinions are consistent with the
evidence in its entirety (R. at 22).  In fact, the ALJ's
physical RFC findings prior to January 1, 2011 are identical
with the opinions expressed by Dr. Winkler (R. at 20, 1563-
1568).  However, the ALJ failed to explain why the opinions of
Dr. Winkler are consistent with the evidence in its entirety.
The court would first note that, when summarizing the medical
evidence regarding plaintiff's gout and asthma prior to January

10

1, 2011, the ALJ almost exclusively cited to medical records that preceded the alleged onset date of March 11, 2008 (R. at 21-22). The court is concerned with the ALJ's reliance on medical records that preceded the alleged onset date when the ALJ asserts that the opinions of Dr. Winkler are consistent with the evidence in its entirety, especially given the fact that Dr. Winkler was informed that plaintiff's alleged onset date was March 11, 2008 (R. at 1570).

Second, the court finds that a summary conclusion that the assessment was consistent with the evidence in its entirety is beyond meaningful judicial review. In the absence of ALJ findings supported by specific weighing of the evidence, the court cannot assess whether relevant evidence supports the ALJ's conclusion that an assessment was or was not consistent with the overall record. See Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996). Boilerplate, conclusory statements must be linked to evidence in the record. See Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). Conclusory statements do not provide justification for accepting or rejecting a medical source opinion; the Commissioner must give specific, legitimate reasons for accepting or rejecting the medical source opinion. Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988). Other than the ALJ's conclusory statement, the ALJ provided no discussion in her

opinion to support her assertion that the opinions of Dr.
Winkler are consistent with the evidence in its entirety.

Third, as noted above, the opinions of Dr. Winkler are
presented on a check-the-box evaluation form with no narrative
explanation for the opinions.  In the case of Fleetwood v.
Barnhart, 211 Fed. Appx. 736 (10th Cir. Jan. 4, 2007), the ALJ
relied on a state agency medical consultant who filled out a
check-the-box evaluation form, which, standing alone, the court
found did not constitute substantial evidence.  The court stated
that no other medical evidence in the record specifically
addressed her ability to work.  The court held as follows:

> To the extent there is very little medical
> evidence directly addressing Ms. Fleetwood's
> RFC, the ALJ made unsupported findings
> concerning her functional abilities. Without
> evidence to support his findings, the ALJ
> was not in a position to make an RFC
> determination.
>
> The ALJ's inability to make proper RFC
> "findings may have sprung from his failure
> to develop a sufficient record on which
> those findings could be based." Washington
> v. Shalala, 37 F.3d 1437, 1442 (10th
> Cir.1994). The ALJ must "make every
> reasonable effort to ensure that the file
> contains sufficient evidence to assess RFC."
> Soc. Sec. R. 96-8p, 1996 WL 374184, at *5.
> Because the disability hearing is
> nonadversarial, an ALJ is obligated to
> develop the record even where, as here, the
> claimant is represented by counsel. Thompson
> v. Sullivan, 987 F.2d 1482, 1492 (10th
> Cir.1993); accord Hawkins v. Chater, 113
> F.3d 1162, 1164, 1168 (10th Cir.1997). Even
> though Ms. Fleetwood's counsel did not

> request any additional record development,
> the need for additional evidence is so
> clearly established in this record that the
> ALJ was obliged to obtain more evidence
> regarding her functional limitations. <u>See</u>
> <u>Hawkins</u>, 113 F.3d at 1167-68.

<u>Fleetwood</u>, 211 Fed. Appx. at 740-741; <u>see</u> <u>Martin v. Astrue</u>, Case No. 09-1235-SAC (June 28, 2010, Doc. 13-15, 16-18).

The only other medical opinion evidence regarding plaintiff's physical limitations are those of Dr. Yang, as set forth above.  The ALJ stated that she gave some, but not controlling weight to his opinions prior to January 1, 2011. The ALJ noted that x-ray results were normal, with no acute fractures or abnormalities identified (R. at 23).  Clearly, the ALJ was implying that these negative findings provided a basis for discounting the opinions of Dr. Yang, a treatment provider. However, the adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treatment providers and other medical sources.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1221 (10th Cir. 2004).  An ALJ's broad assertion that the medical evidence identifies no clinical signs typically associated with musculoskeletal pain, such as muscle atrophy, deformity, loss of motion, or neurological deficits was found to be an improper justification for disregarding an opinion of a treating source.  The ALJ is not a medical expert on identifying the clinical signs typically associated with chronic

musculoskeletal pain.  An ALJ is not entitled to sua sponte render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.  Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).

As was the case with musculoskeletal pain in Bolan, the ALJ is not a medical expert on identifying the clinical signs associated with pain from gout.  Absent medical evidence, the ALJ cannot render a medical judgment regarding the relative significance of negative x-rays, or the lack of certain abnormalities or acute fractures on the opinions expressed by Dr. Yang.

The ALJ also cited to two medical records showing that plaintiff's gout was controlled with medication and that the pain level was relatively low (Exhibit 2F-570, Exhibit 2F-438) as a basis for discounting the opinions of Dr. Yang (R. at 23). However, these records are dated May 31, 2007 and January 15, 2008 (R. at 1262, 1130).  Both of these records predate plaintiff's alleged onset date of March 11, 2008, and thus do not contradict Dr. Yang's opinions regarding plaintiff's limitations as of March 2008.

The ALJ also relied on plaintiff's daily activities prior to January 1, 2011, alleging that they were inconsistent with

his allegations of disability.  The ALJ noted that plaintiff
cared for his disabled wife, his independence in self-care,
preparation of meals, washing clothes, taking care of business
in the community, and that plaintiff shopped for groceries every
10 days (R. at 22).  According to the regulations, activities
such as taking care of yourself, household tasks, hobbies,
therapy, school attendance, club activities or social programs
are generally not considered to constitute substantial gainful
activity.  20 C.F.R. § 404.1572(c) (2013 at 399).  Furthermore,
although the nature of daily activities is one of many factors
to be considered by the ALJ when determining the credibility of
testimony regarding pain or limitations, Thompson v. Sullivan,
987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind
that the sporadic performance of household tasks or work does
not establish that a person is capable of engaging in
substantial gainful activity.  Krauser v. Astrue, 638 F.3d 1324,
1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

     In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131
(8th Cir. 2005), the ALJ noted that the claimant engaged in
household chores, including laundry, grocery shopping, mowing,
cooking, mopping and sweeping.  The ALJ concluded that
claimant's allegations of disabling pain were inconsistent with
her reports of her normal daily activities and were therefore

not deemed credible.  The court found that substantial evidence
did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her
> home and does her best to engage in ordinary
> life activities is not inconsistent with her
> complaints of pain, and in no way directs a
> finding that she is able to engage in light
> work.**  As we said in McCoy v. Schweiker, 683
> F.2d 1138, 1147 (8th Cir.1982) (en banc),
> the test is whether the claimant has "the
> ability to perform the requisite physical
> acts day in and day out, in the sometimes
> competitive and stressful conditions in
> which real people work in the real world."
> In other words, evidence of performing
> general housework does not preclude a
> finding of disability.  In Rainey v. Dep't
> of Health & Human Servs., 48 F.3d 292, 203
> (8th Cir.1995), the claimant washed dishes,
> did light cooking, read, watched TV, visited
> with his mother, and drove to shop for
> groceries.  We noted that these were
> activities that were not substantial
> evidence of the ability to do full-time,
> competitive work. In Baumgarten v. Chater,
> 75 F.3d 366, 369 (8th Cir.1996), the ALJ
> pointed to the claimant's daily activities,
> which included making her bed, preparing
> food, performing light housekeeping, grocery
> shopping, and visiting friends.  We found
> this to be an unpersuasive reason to deny
> benefits: "**We have repeatedly held...that
> 'the ability to do activities such as light
> housework and visiting with friends provides
> little or no support for the finding that a
> claimant can perform full-time competitive
> work.**'" Id. (quoting Hogg v. Shalala, 45
> F.3d 276, 278 (8th Cir.1995)). Moreover, we
> have reminded the Commissioner
>
>> **that to find a claimant has the
>> residual functional capacity to
>> perform a certain type of work,
>> the claimant must have the ability
>> to perform the requisite acts day**

> **in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity**.

Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

In Hughes v. Astrue, 705 F.3d 276 (7th Cir. 2013), the court stated:

> [The ALJ] attached great weight to the applicant's ability to do laundry, take public transportation, and shop for groceries. We have remarked the naiveté of the Social Security Administration's administrative law judges in equating household chores to employment. "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (... [her] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases [citations omitted]."

705 F.3d at 278.  Therefore, the fact that plaintiff cares for his wife, is independent in self-care, cooks, washes clothes, and shops occasionally does not demonstrate that plaintiff can

engage in work at a competitive level over an 8 hour day, and is
not inconsistent with plaintiff's allegation of disability.

Finally, the ALJ failed to mention or discuss the 3rd party
report of plaintiff's wife (R. at 338-345). In Blea v. Barnhart,
466 F.3d 903 (10th Cir. 2006), the ALJ failed to discuss or
consider the lay testimony of the claimant's wife; the ALJ's
decision failed to mention any of the particulars of the
testimony of claimant's wife, and in fact, never even mentioned
the fact that she did testify regarding the nature and severity
of her husband's impairments.  The court held as follows:

> In actuality, the ALJ is not required to
> make specific written findings of
> credibility only if "the written decision
> reflects that the ALJ considered the
> testimony." Adams, 93 F.3d at 715. "[I]n
> addition to discussing the evidence
> supporting his decision, the ALJ also must
> discuss the uncontroverted evidence he
> chooses not to rely upon, as well as
> significantly probative evidence he
> rejects." Clifton v. Chater, 79 F.3d 1007,
> 1009 (10th Cir.1996).
>
> Here, the ALJ made no mention of Mrs. Blea's
> testimony, nor did he refer to the substance
> of her testimony anywhere in the written
> decision. Thus, it is not at all "clear that
> the ALJ considered [Mrs. Blea's] testimony
> in making his decision." Adams, 93 F.3d at
> 715. Additionally, Mrs. Blea's testimony
> regarding her husband's suicidal thoughts is
> not only uncontroverted; it serves to
> corroborate Dr. Padilla's psychiatric
> examination of Mr. Blea, where he stated
> that Mr. Blea has been dysthymic for years.
> [citation to record omitted] Thus, the ALJ's
> refusal to discuss why he rejected her

> testimony violates our court's precedent,
> and requires remand for the ALJ to
> incorporate Mrs. Blea's testimony into his
> decision. "Without the benefit of the ALJ's
> findings supported by the weighing of this
> relevant evidence, we cannot determine
> whether his conclusion[s] ... [are]
> supported by substantial evidence." Threet,
> 353 F.3d at 1190; see also Baker v. Bowen,
> 886 F.2d 289, 291 (10th Cir.1989) ("[W]here
> the record on appeal is unclear as to
> whether the ALJ applied the appropriate
> standard by considering all the evidence
> before him, the proper remedy is reversal
> and remand.").

Blea, 466 F.3d at 915.

According to Blea, the ALJ, at a minimum, should indicate in his decision that he has considered the 3rd party testimony. Defendant concedes that the ALJ did not discuss this report in her decision (Doc. 30 at 15). The report from plaintiff's wife, dated August 4, 2010, corroborates the opinions expressed by Dr. Yang regarding plaintiff's limitations prior to January 1, 2011. For this reason, the ALJ erred by failing to mention her report.

The court finds that the ALJ erred in her consideration of the opinions of Dr. Winkler and Dr. Yang. For this reason, the ALJ failed to provide a legally sufficient explanation for rejecting the opinions of a treating medical source (Dr. Yang) in favor of a non-examining source (Dr. Winkler). The ALJ also erred in her reliance on plaintiff's daily activities, and by failing to discuss or mention the report of plaintiff's wife. Together, these errors are not harmless. For these reasons, the

court finds that substantial evidence does not support the ALJ's RFC findings prior to January 1, 2011.

## IV.  Did the ALJ err in his step four analysis?

The court will not discuss this issue in detail because it may be affected by the ALJ's resolution of the case on remand. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004). However, if the ALJ again makes findings at step four, the ALJ shall make those findings in accordance with the case law and agency rulings.  At step four, the ALJ is required by Social Security Ruling (SSR) 82-62 to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given his or her residual functional capacity.  Henrie v. United States Dep't of HHS, 13 F.3d 359, 361 (1993).  Thus, at the third or final phase of the analysis, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.  At each of these three phases, the ALJ must make specific findings.  Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir. 2007);  Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).[1]  An ALJ can comply with these requirements if he quotes

---

[1] In Winfrey, the court noted that the Secretary glossed over the absence of the required ALJ findings by relying on the testimony of the vocational expert (VE) that plaintiff could meet the mental demands of his past relevant work, given his mental limitations as found by the ALJ.  The court stated that this practice of delegating to a VE many of

the VE's testimony with approval in support of his own findings at phases two and three of the step four analysis.  Doyal v. Barnhart, 331 F.3d 758, 760-761 (10th Cir. 2003).[2]  When the ALJ fails to make findings at phase two of step four regarding the physical and/or mental demands of plaintiff's past work, the case will be remanded for a proper step four analysis.  Bowman v. Astrue, 511 F.3d 1270, 1271-1273 (10th Cir. 2008); Frantz v. Astrue, 509 F.3d at 1303-1304; Kilpatrick v. Astrue, 559 F. Supp.2d 1177, 1182-1185 (D. Kan. 2008)(Belot, D.J.).  However, when the ALJ makes proper findings at step five, any error at

---

the ALJ's fact finding responsibilities at step four appears to be of increasing prevalence and is to be discouraged. The court went on to say as follows:

> Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review.  When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review...a VE may supply information to the ALJ at step four about the demands of the claimant's past relevant work...[but] the VE's role in supplying vocational information at step four is much more limited than his role at step five...Therefore, while the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work.

Winfrey, 92 F.3d at 1025.

[2] The ALJ's findings in Doyal were as follows:

> The vocational expert testified that the claimant's past relevant work as a housecleaner and sewing machine operator would be classified as light and unskilled, and her past relevant work as an activities director would be classified as light and semiskilled.... The vocational expert indicated that the claimant's past relevant work as a housecleaner and sewing machine operator did not require lifting more than 20 pounds, walking for prolonged periods, or performing tasks requiring bilateral normal grip strength.

Doyal, 331 F.3d at 760.  The ALJ found that plaintiff could perform past relevant work as a housecleaner and a sewing machine operator.  331 F.3d at 761.  As noted above, the ALJ cited with approval the testimony of the vocational expert concerning the physical demands of the 2 past jobs which the ALJ found that the claimant could still perform.

step four will be deemed harmless error.  Martinez v. Astrue, 316 Fed. Appx. 819, 824 (10th Cir. Mar. 19, 2009); see Murrell v. Shalala, 43 F.3d 1388, 1389-1390 (10th Cir. 1994).

IT IS THEREFORE ORDERED that the judgment of the Commissioner that plaintiff was not disabled prior to January 1, 2011 is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 19th day of August 2015, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge